**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CLAUDE D. WALLACE, Individually and as Trustee
of the CLAUDE D. WALLACE LIVING TRUST dated July 31, 2005;
HAROLD BRUMLEY and NELDA BRUMLEY,
Individually and as Trustees of the BRUMLEY LIVING TRUST,
dated December 1, 2011; and RODNEY LONG,
On Behalf Of Themselves And All Others Similarly Situated**         **PLAINTIFFS**

**v.**                                  **Case No. 4:13-cv-00608 KGB**

**XTO ENERGY, INC. and
EXXON MOBIL CORPORATION**                                        **DEFENDANTS**

<u>**ORDER**</u>

On October 24, 2013, plaintiffs filed this class action suit for underpayment of royalties against defendants XTO Energy, Inc. ("XTO") and Exxon Mobil Corporation ("Exxon") (Dkt. No. 1).  Plaintiffs assert claims for breach of their respective oil and gas leases, as well as various tort, common law, and statutory claims.  XTO and Exxon filed separate motions to dismiss for failure to state a claim (Dkt. Nos. 8, 10).  All parties submitted several filings addressing the pending motions (Dkt. Nos. 15-17, 20).  The Court grants in part and denies in part defendants' motions to dismiss.

**I.        Factual Background**

Plaintiffs allege that defendants engaged in a variety of deceptive and fraudulent practices to reduce improperly and secretly royalty payments owed to plaintiffs and potential class members under their oil and gas leases with XTO.  Plaintiffs allege that Exxon is the parent company of XTO.  Specifically, plaintiffs allege that defendants use improper accounting methods, such as starting with a price that is too low and taking deductions for marketing, gathering, compression, and dehydration, which are collectively referred to as "post-production expenses" ("PPEs").

## II.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## III.      Analysis

### A.      Fraud, Fraudulent Concealment, And Arkansas Deceptive Trade Practices Act Claims

Plaintiffs' fraud and Arkansas Deceptive Trade Practices Act ("ADTPA") claims are subject to Federal Rule of Civil Procedure 9(b), which requires plaintiffs to state with particularity the circumstances constituting the alleged fraud.  "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

Defendants argue that plaintiffs' fraud and ADTPA claims fail to satisfy Rule 9(b)'s particularity requirement.  Here, plaintiffs set forth particular factual allegations that defendants engaged in fraudulent conduct.  Specifically, plaintiffs in their complaint allege that, beginning around October 31, 2006, and continuing through today, defendants "secretly carried out [their] scheme" to take improper deductions from and underpay plaintiffs' royalty payments through a variety of tactics (Dkt. No. 1, at 6-7, 11-12).  Defendants' tactics allegedly include "a series of common omissions and misrepresentation in fact," such as misrepresenting on plaintiffs' check stubs that a proper accounting was made, starting with a price that was too low, and omitting that PPEs were deducted (*Id.*).  Taken as true, plaintiffs' allegation that defendants engaged in fraudulent conduct survives a motion to dismiss.  *See Drobnak v. Anderson Corp.*, 561 F.3d 778, 783-84 (8th Cir. 2009) (holding that allegations pleaded on information and belief meet Rule 9(b)'s particularity requirement when the facts constituting the fraud are peculiarly within the opposing party's knowledge and if accompanied by a statement of facts on which the belief is founded); *see also Rath v. BHP Billiton Petroleum (Ark.), Inc.*, No. 4:13-cv-00602 BSM, slip op. at 2-3 (E.D. Ark. Jan. 16, 2014); *Collins v. SEECO, Inc.*, No. 4:11-cv-761-DPM, 2012 WL 2309080, *2 (E.D. Ark. June 18, 2012).

Next, defendants argue that plaintiffs do not plead any cognizable tort claim, including fraud and conversion, because the alleged underpayment of royalties is merely a claim for breach of contract and, under Arkansas law, "a breach of contract is not turned into a tort even if the breach is malicious."  *See JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 738 (8th Cir. 1995) (citing *Quinn Cos., Inc. v. Herring-Marathon Grp., Inc.*, 773 S.W.2d 94 (Ark. 1989)).  However, in *Quinn Companies*, the Arkansas Supreme Court explained that, although "a plaintiff may not transform a breach of contract action into a tort claim by alleging the breach was motivated by

malice," "if the facts warrant, a party to a contract may sue on an independent tort claim." 773 S.W.2d at 432. "The breach itself simply is not a tort," but, the court made clear, "the same conduct may give rise to either an action in tort or in contract." *Id.* Thus, if plaintiffs sufficiently state a claim for a particular tort, as the Court determines plaintiffs have done for fraud, that tort claim can be brought alongside a contract claim.

Defendants also argue that plaintiffs' ADTPA claim fails because: (1) the standard of conduct allegedly breached by defendants is contractual; (2) plaintiffs' alleged conveyances of leasehold interests to XTO involve real property, not goods and services; and (3) plaintiffs plead no facts showing that they purportedly suffer from physical infirmity, ignorance, illiteracy, or inability to understand (Dkt. No. 9, at 21). The Court rejects defendants' arguments.

First, as with plaintiffs' tort claims, plaintiffs may bring an ADTPA claim alongside their contract claims. *See Rath*, No. 4:13-cv-00602 BSM, slip op. at 2-3; *Collins*, 2012 WL 2309080, *2; *Vanoven v. Chesapeake Energy Corp.*, No. 4:10-cv-0158 BSM, 2011 WL 1042251, at *5-6 (E.D. Ark. Mar. 22, 2011); *see also Butler & Cook, Inc. v. CenterPoint Energy Gas Transmission Co.*, No. 2:12-2107, 2012 WL 4195906, *5 (W.D. Ark. Sept. 18, 2012) (dismissing ADTPA claim because defendant's alleged wrongs were an "ordinary breach of a contract" where plaintiff did not allege facts showing that defendant engaged in unconscionable, false, or deceptive act or practice in business commerce or trade).

Second and third, plaintiffs need not allege all of the deceptive and unconscionable trade practices listed in Arkansas Code Annotated § 4-88-107 to bring an ADTPA claim; plaintiffs must only allege one. Under § 4-88-107(a)(10), plaintiffs may merely allege that defendants engaged in an "unconscionable, false, or deceptive act or practice in business, commerce, or trade." Accordingly, a claim under the ADTPA need not involve goods or services or a

4

consumer who is reasonably unable to protect his or her interest.  *See Collins*, 2012 WL 2309080, *2 (finding that allegations of several specific deceptive trade practices make a plausible case that defendants engaged in deceptive business practices within the catch-all provision of Arkansas Code Annotated § 4-88-107(a)(10)); *Vanoven*, 2011 WL 1042251, at *5-6 ("[T]he ADTPA protects the business community at large, providing its members with a broad cause of action to remedy harms suffered from deceptive or unconscionable conduct.").  For all of these reasons, the Court denies defendants' motions to dismiss plaintiffs' fraud, fraudulent concealment, and ADTPA claims.

### B. Declaratory Judgment

Plaintiffs request a declaratory judgment that defendants have underpaid royalties. Although this request for relief is likely duplicative, there is no harm in leaving this claim in the litigation at this stage of the proceeding.  The Court denies defendants' motions to dismiss on this basis.

### C. Breach Of Contract By XTO

Plaintiffs have alleged factual content sufficient to state a breach of contract claim. Specifically, plaintiffs allege that their leases require XTO to place the gas and its constituent parts into "marketable condition" and to account properly for and pay royalty interests to royalty owners (Dkt. No. 1, at 12-13).  Plaintiffs also allege that XTO instead uses methods to reduce royalty payments improperly (*Id.*).  Defendants are mistaken in asserting that Arkansas law clearly rejects the marketable condition rule.  Arkansas law as to the marketable condition rule is unclear, and, thus, its purported rejection cannot be the basis for dismissal of plaintiffs' breach of contract claim.  *See Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 503-505 (E.D. Ark. 2009).

The Court also denies at this time XTO's motion to dismiss the Brumley plaintiffs' breach of contract claim.  XTO cites no controlling authority for the proposition that failure to plead compliance with an oil and gas lease's notice-and-cure provision is fatal at the motion to dismiss stage.  In support of its argument, XTO cites a Seventh Circuit case dealing with insurance contracts and *Adams v. Wacaster Oil Co.*, 98 S.W.3d 832, 835 (Ark. Ct. App. 2003), which held that "the giving of reasonable notice is a condition precedent to recovery" under a specific Uniform Commercial Code provision.  XTO does not argue that the Brumley lease is governed by the Uniform Commercial Code.

### D.      Statutory Duty of Good Faith Prudent Operator Standard

The Court grants XTO's motion to dismiss plaintiffs' claim under the prudent operator standard.  Arkansas law requires lessees to develop and operate a leased mineral estate in good faith as a prudent operator.  Ark. Code. Ann. § 15-73-207.  The controlling statute creates no independent cause of action; it is merely an oil-and-gas specific version of the duty of good faith and fair dealing inherent in all contracts.  *See Collins*, 2012 WL 2309080, *1.  Plaintiffs' allegation that XTO violated the prudent operator standard survives only as a part of plaintiffs' breach of contract claim.

### E.      Unjust Enrichment

The Court grants XTO's motion to dismiss plaintiffs' unjust enrichment claim.  Generally, "the doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract."  *Varner v. Peterson Farms*, 371 F.3d 1011, 1018 (8th Cir. 2004).  Though there are exceptions under Arkansas law, none appear to apply here. *Id.* at 1018 n.4.  Moreover, there are separate contracts between plaintiffs and XTO, and plaintiffs have not alleged facts supporting a conclusion that their contracts are not valid, legal, and binding.  Instead, plaintiffs

6

argue that the contracts do not fully address the subject at issue in this case.  *See Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 37 (Ark. 2011) ("[W]hen an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice.").  The Court disagrees.  *See Collins*, 2012 WL 2309080, *2 (dismissing unjust enrichment claims against a lessee for alleged underpayment of royalties because the lease specifically covered the royalties owed).  The Court dismisses this claim against XTO without prejudice.

The Court denies Exxon's motion to dismiss plaintiffs' unjust enrichment claim.  Unlike XTO, plaintiffs had no contracts with Exxon, and plaintiffs allege Exxon conspired with XTO to "profit inequitably" at plaintiffs' expense (Dkt. No. 16, at 17).  Taken as true, plaintiffs' allegations support a plausible claim for unjust enrichment against Exxon.  *See id.*; *Vanoven*, 2011 WL 1042251, at *6.

### F.    Civil Conspiracy

Plaintiffs have stated a facially plausible claim for civil conspiracy.  To prove such a claim, plaintiffs must show "a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in and of itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another." *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 331 (Ark. 2010) (citation omitted).  "A civil conspiracy is an intentional tort which requires specific intent to accomplish the contemplated wrong."  *Allen v. Allison*, 155 S.W.3d 682, 689 (Ark. 2004).  Moreover, under Arkansas law, civil conspiracy must be predicated on some other underlying tort.  *See Varner*, 371 F.3d at 1016.  In their complaint, plaintiffs allege that defendants "engage in a civil conspiracy" regarding their methods of accounting for gas sales that "reduced the amount of royalties and excess royalties and unjustly increased the profits of the [d]efendants" (Dkt. No. 1, at 15).

Defendants quote Eighth Circuit precedent to argue that "a parent and its subsidiary cannot conspire" (Dkt. No. 9, at 25). The Arkansas Supreme Court, however, has declined to apply the intracorporate conspiracy doctrine, which has been applied primarily in the area of antitrust litigation, to civil conspiracy claims. *SEECO, Inc. v. Hales*, 22 S.W.3d 157, 173 (Ark. 2000). Sitting in diversity, this Court must apply Arkansas substantive law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."). For these reasons, the Court denies defendants' motions to dismiss plaintiffs' civil conspiracy claim.

### G.     Equitable Accounting

The Court grants defendants' motions to dismiss plaintiffs' equitable accounting claim. Equitable accounting is an equitable remedy available only where there is no remedy at law. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962). To maintain an equitable accounting claim, plaintiffs must show "that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Id.* at 478 (citation omitted) (internal quotation marks omitted). Plaintiffs claim in their response that "[t]he accounts between the parties in this case are of a complicated nature and can only be sorted out by a court of equity" (Dkt. No. 16, at 19). However, plaintiffs do not so plead in their complaint and do not plead factual content that would allow this Court to infer reasonably this conclusion. The Court at this stage dismisses without prejudice plaintiffs' equitable accounting claim.

### H.     Treble Damages

Controlling Arkansas law provides for treble damages in certain instances where leaseholders wrongfully deprive royalty owners of their interest. Ark. Code Ann. § 15-74-708. As determined above, plaintiffs' complaint contains facts that support their claim that defendants

deprived them of royalty payments due under their leases.  Plaintiffs further plead that they are "entitled to treble damages on all underpayments of royalties herein from all [d]efendants" (Dkt. No. 1, at 17).  The Court determines that plaintiffs have stated a facially plausible claim for treble damages and denies defendants motion to dismiss on this basis.

## I.      Punitive Damages And Injunctive Relief

Plaintiffs plead sufficient facts to support a claim for punitive damages and injunctive relief, and, as a result, the Court denies defendants' motions to dismiss these claims.

## J.      Class Action Claims

Federal Rule of Civil Procedure 23 requires the Court to determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative."  Fed. R. Civ. P. 23(c)(1)(A).  In some cases, discovery may be needed to determine whether to certify a class.  *See Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).  For this reason, the Court will not require plaintiffs to establish that they can maintain a class before they attempt to do so by filing a motion for class certification.  *See Caviness v. Nucor-Yamato Steel Co.*, No. J-C-92-023, 1992 WL 521767 (E.D. Ark. June 1, 1992) (denying defendants' motion to dismiss plaintiff's proposed class action as premature where plaintiff had not yet filed a formal motion for class certification but had filed motions to extend the time for moving for class certification and to permit further discovery).  Even so, the Court may dismiss plaintiffs' class action claims under Rule 12(b)(6) standards if plaintiffs do not allege facts sufficient to support all of the elements for class certification required by Rule 23.  *See Roberts v. Target Corp.*, No. CIV-11-951-HE, 2012 WL 2357420, at *2-3 (W.D. Okla. June 20, 2012); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009); *Blihovde v. St. Croix Cnty.*, 219 F.R.D. 607, 614 (W.D. Wis. 2003) ("[W]hen there has been no discovery and the defendants challenge class certification

on the basis of the allegations in the complaint only, the proper standard is the same as a motion

to dismiss for failure to state a claim."); *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 594 (M.D. Pa.

1997).

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and

must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d

1116, 1119 (8th Cir. 2005). Rule 23(a) permits class certification where:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(a) also contains two implicit requirements: that membership in

the class definition be ascertainable by some objective standard and that the class representatives

be members of the proposed class. *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 250-51 (W.D.

Ark. 2011) (citing *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 360 (S.D. Iowa 2008)).

Plaintiffs propose three classes for certification (Dkt. No. 1, at 8). The Court determines

that, for each proposed class, plaintiffs have alleged facts sufficient to support all of the elements

for class certification required by Rule 23.

## 1.    Implicit Requirements

"Although the identity of individual class members need not be ascertained before class

certification, the membership of the class must be ascertainable." *Riedel*, 257 F.R.D. at 506. To

be ascertainable, "the class definition must be drafted in such a way to ensure that membership is

ascertainable by some objective standard." *Walls*, 274 F.3d at 250.

Plaintiffs properly plead ascertainable classes of which they are members. The classes

are ascertainable because members may be identified by objective data, such as information that

can be obtained by XTO regarding the wells it operates or the royalty owners it pays and public

records identifying any other oil or gas leases.  Defendants argue that plaintiffs do not plead facts showing they are members of Class III.  Plaintiffs respond that the Wallace lease is the same as that received by all integrated mineral owners, and, thus, the Wallace plaintiffs appear to be members of Class III.  Defendants' other arguments as to ascertainability are more appropriate for the class certification stage.

### 2.    Numerosity

The first requirement under Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  "In establishing numerosity, a plaintiff does not need to show the exact number of potential class members, only that the number is such that joinder is extremely difficult or inconvenient."  *Walls*, 274 F.R.D. at 253.  Plaintiffs plead that the "members of the class are so numerous and geographically dispersed that joinder of all members is impracticable"; that "XTO operates a large number of gas wells in the Fayetteville Shale Play, with at least one, and frequently many more, royalty and excess royalty owners for each well"; and that "XTO has within its possession or control records that identify all persons to whom they have paid royalties and excess royalties from wells located within Arkansas from October 31, 2006 to the present" (Dkt. No. 1, at 8).  Plaintiffs' alleged facts are sufficient to support numerosity at this stage, though more specificity will be required before certification.

### 3.    Maintainability Under Subsections Of Rule 23(b)

Rule 23(b)(3) allows class certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Defendants argue that common questions of law or fact would not predominate because the plaintiffs and putative class members' claims will require

individualized examinations and determinations concerning their respective oil and gas leases. Plaintiffs plead, however, that though "[t]here are numerous forms of gross proceeds leases . . . , the [d]efendants treat all of such leases the same in that the amount paid to the mineral owners is a price per million cubic feet (MCF) which is net of [PPEs]" (Dkt. No. 1, at 5-6).  Based on the factual allegations discussed above, plaintiffs go on to allege that XTO fraudulently conceals the fact that it deducts PPEs from mineral owners with such leases (*Id.* at 5-6).  Plaintiffs list several questions of law or fact that would be common based on plaintiffs' theory of common treatment of gross proceeds leases (*Id.* at 10).  While ultimately on a more complete record defendants' argument that such leases in fact differ may have merit, at this stage of the analysis the Court must accept allegations contained in the complaint as true.  Accordingly, plaintiffs' plead facts sufficient to support a reasonable inference of predominance.

\* \* \*

Defendants' motions to dismiss are granted in part and denied in part, consistent with this Order.  The Court dismisses against XTO plaintiffs' statutory duty of good faith prudent operator standard claim and unjust enrichment claim and dismisses against both defendants plaintiffs' equitable accounting claim.

SO ORDERED this 22nd day of August, 2014.


_____
Kristine G. Baker
United States District Judge